## C. L. AVERY *v.* THE STATE.

1. DECLARATIONS BETWEEN CONFEDERATES — PRACTICE.— No inflexible rule requires more than a *prima facie* showing of conspiracy between the defendant and a confederate, in order to make declarations of the latter evidence against the former. Nor is it absolutely requisite that the showing of the conspiracy shall precede the proof of the declarations, though that is the usual and preferable course of procedure. Such matters are largely subjected to the judicial discretion of the trial judge.

2. SAME.— Every act and declaration of each conspirator, pending and pursuant to the concerted plan and object, is the act and declaration of all and each of them, and it is therefore original evidence against any one of them, irrespective of the time at which he engaged in the conspiracy. Otherwise with regard to declarations

made subsequent to the consummation of the conspiracy and not acquiesced in by the other confederates.

3. SAME.— In a trial for murder the State was allowed, over objection, to elicit from a witness what he was told by a confederate of the defendant, in the latter's absence and after the murder, about concealing the gun it was committed with. *Held*, not proper evidence to inculpate the defendant, but, being obviously of no significance in the present case, it was of no materiality. If the object of the proof had been merely to trace up and identify the gun, it would, it seems, have been legitimate.

4. EVIDENCE OF DECEASED WITNESS.— A person called to prove the testimony given at a former trial by a witness who has since died may state its substance, if unable to repeat its words.

5. THE "RULE."— The enforcement of the rule to sequester the witnesses rests in the discretion of the trial judge, and his action will not be revised on appeal unless abuse of that discretion to the appellant's prejudice be made apparent.

6. ACCOMPLICE TESTIMONY.— Note in the opinion the charge to the jury on the subject of the testimony of an accomplice and its corroboration, and which is sustained by this court.

APPEAL from the District Court of Limestone. Tried below before the Hon. D. M. PRENDERGAST.

This is the companion case to that of *Simms* v. *State*, which precedes it in this volume, and, like that case, resulted in a verdict of murder in the first degree and a life-term in the penitentiary. The evidence adduced by the State to establish the *res gestæ* and the inculpatory circumstances was in both cases the same in substance and elicited from the same witnesses, with very few exceptions. A full detail of that evidence having been given in the Simms case it is not necessary to recapitulate it here, and it is sufficient to note only such matters as are peculiar to the present case. The evidence of the deceased witness, Pollock, was reproduced in this case by the testimony of J. Kimball, instead of by that of Burrows and Clark, who testified in the Simms case. J. W. Little, for the State, testified that the defendant Avery, when before the citizens' committee, stated that he was

with Plummer on the latter's gallery, when the fatal shots were fired. Pete Williams was before that committee, but his shoulder was not examined. On cross-examination, however, the witness said he could not name all whose shoulders were examined,—for the purpose, presumably, of seeing whether there were such indications as the recoil of a gun might leave. There were over a hundred persons at the meeting of the committee, and the shoulders of two-thirds of them were examined. Witness acknowledged that he had raised a subscription to pay lawyers to prosecute the defendant.

O. S. Mason, for the State, testified that soon after the killing of William Simms the defendant Avery came to witness' house early in the night, hallooed at the gate in rather a low tone, and, when witness went out, said he wanted to talk to him. They went around into a ravine, and Avery said he wanted witness to go with him to Groesbeck, as he desired to give himself up to the sheriff. Witness, being tired and sleepy, refused to go with him. Defendant stayed in witness' field the next day. He said he was innocent of the killing, and was sitting on Plummer's gallery when it was done; that Plummer had gone off late in the afternoon, but came home shortly after he, Avery, heard the shots; that he met Plummer at the gate and Plummer said he had "got that fellow;" that he asked who, and Plummer replied, "Bill Simms;" that he then inquired why he had shot him so much, and Plummer replied "to stop his d—d hollering;" and that Plummer said that this was the sixth man he had killed, and that he, Avery, was the only person who knew about it, and if he told it, that he, Plummer, would kill him.

On his cross-examination, this witness Mason said he had known Avery since about 1846, and knew his reputation until after the war to be that of a peaceable, quiet, good citizen, though at times he would drink a little too much whiskey. Repeating Plummer's last remark to him

on the occasion in question, Avery gave the language to witness as follows: "Avery, I have gotten away with six men before; you are the only one who knows my secret, and if you tell it you will go the same way the other six went."

J. G. Parsons, for the State, testified that a conversation took place in his cotton-patch, the Monday after the killing of Simms, between him and the defendant, Avery. In that conversation Avery said that, when the gun was fired which did the killing, he was on one side of Plummer's gallery, Plummer on the other side, and Mrs. Plummer between them, suckling her baby. After the meeting of the citizens, Avery said to witness: "Some one told me that I was accused, and I am afraid they will take me out and try to make me tell something, and I am too old to be treated that way;" adding that he did not intend to stay in the house at night, but would stay out.

On his cross-examination the witness said that Bill Simms and Avery were at his house to supper, about two weeks before the former was killed, and after supper went off and talked for half an hour; after which they came back, and a general conversation ensued. When Simms left, he invited all the party to come and see him. Avery's reputation as a peaceable man is good. He worked at Plummer's for a few days before and after the murder. Monday morning after that event, he started to go to the deceased's, but Gregory, the magistrate, sent him after Mr. Rogers. Witness saw him at the burial of the murdered man.

The defense introduced W. J. Reeves, Peter Roehurst, and Henry Avery, whose evidence has already been given in the Simms case. The only other witness for the defendant was Nathan Hooper, who testified that, with Gregory and others, he visited Plummer in the jail, and Gregory told Plummer to make a statement to witness. Relating

the statement then made by Plummer, the witness pro-
ceeded as follows: "Plummer then said they (inferen-
tially Bunk Simms, Avery and himself) went together. I
asked him who did the shooting. He said he did not
know. I asked him why? He said because they came to
him and forced him to go, and said to him, 'You know
about it, and, d—n you, you've got to go;' that as soon
as he got a chance to run he did so, and was forty or fifty
yards off when the shooting was done. Gregory then
stopped Plummer in his story and said to him, 'you have
sworn differently before committee.' Plummer further
said to me that he didn't know who had the gun and pis-
tol,—thought Bunk Simms started with gun. He said
something about a pistol being drawn on him to force
him to go with them."

In his cross-examination, this witness gave more of
Plummer's statement in the jail on the occasion in ques-
tion,—as follows: "Plummer said Bunk Simms came
to him in the field and pulled out a pistol, and said to him,
'd—n you, you've got to leave, you can't appear against
me.' Plummer didn't say anything to me about Bill's
hollering when he was shot." This witness and several
others concurred in according to the defendant Avery the
reputation of a peaceable and quiet man.

In rebuttal, the State examined E. Summers, the father-
in-law of Bunk Simms. He testified that Pollock came
to his house the night of the killing of William Simms,
to tell him of it. Witness did not know where Bunk
Simms was when Pollock was there, but he came soon
after Pollock left.

On cross-examination he said that about sunset the day
of the murder, he saw the defendant Avery plowing
alone in Plummer's field. Witness did not see Bunk
Simms that afternoon, nor know where he was at the
time of the killing. What became of Avery after sun-
set, the witness did not know, but he, Avery, was staying

at Plummer's, and his family at Parsons', at the time William Simms was killed.

*Farrar & Prendergast*, and *Herring, Kelley & Williams*, for the appellant.

*Thomas Ball*, Assistant Attorney General, for the State.

Winkler, J.   At about twilight on the afternoon of the thirty-first day of May, 1878, the neighborhood of William Simms, a bachelor living alone in Limestone county, was startled by the report of fire-arms in the direction of Simms' house.  Early in the night those living near became aroused, and as by common consent the house of Simms was approached, when the solitary bachelor was found, agreeably to the testimony of the justice of the peace of the precinct, lying in the yard at the steps, dead, with eight shots in his body, and three in the wall beyond where he had been sitting.  Wadding was found in the yard, made of rotten yellow-brown paper.  This witness says that at the time the shot was fired, Simms must have been sitting at the supper-table, eating.  The churn of milk sitting near the table was turned over, and there were several shot in the back of the chair upon which he was sitting.  Shot subsequently taken from the gun corresponded with the buck-shot taken out of Simms' body; another ball taken out of his body was larger and seemed to be a six-shooter large ball.  The wounds on the neck and shoulder, which were supposed to have been made with the pistol, ranged downward, and were larger than the other wounds.  The neck of the deceased, and his shirt, where wounded with the larger balls, were powder-burned.

The killing seems to have occurred on Friday of the week, and seems to have aroused in the neighborhood a general determination to ascertain who were the perpetrators; investigations and examinations were made in

order to ascertain the facts, and informal meetings were resorted to, which led to the arrest of Bunk Simms, a brother of the deceased, and two of his tenants, one Plummer and this appellant, as the guilty parties. Plummer, after having fled to Louisiana and being pursued and arrested, turned State's evidence. This appellant was prosecuted by a separate indictment, charged with the murder; and on a second trial was found guilty of murder in the first degree, his punishment being assessed at confinement in the State penitentiary for the term of his natural life; and, after a motion for a new trial had been overruled, he prosecuted an appeal to this court, and now seeks a reversal of the judgment of conviction against him, on the following assignment of errors:

1. Because the court erred in admitting the immaterial and irrelevant testimony of the witnesses Pete Williams, J. T. Plummer, James Kimball and J. W. Little, as shown in bill of exceptions in the case.

2. Because the court erred in refusing to give the charges asked by the defendant, numbered one and two.

3. Because the court erred in refusing to grant a new trial upon the ground that the verdict of the jury is contrary to the law and the evidence; the evidence in this cause being insufficient to warrant a verdict of guilty.

These assignments of error embrace three separate propositions; first, that the court erred in its ruling upon the evidence; secondly, that the court erred in refusing to give to the jury certain special charges requested by the defendant's counsel; and thirdly, the sufficiency of the testimony to support the verdict; which propositions will claim our attention in the order presented.

The first error assigned is based upon the rulings of the court on evidence, which several rulings are specifically set out in a bill of exceptions reserved on the trial below and embodied in the transcript sent up for inspection, and embrace the following questions, each of which demand

a separate consideration at our hands: 1st, the State's witness, Pete Williams, being on the stand and testifying as to a conversation which occurred at a time previous to the homicide, and when the defendant was present, in which a question was asked by Bunk Simms and answered by the defendant; and to the question and answer the defendant's counsel objected on the grounds, 1st, because irrelevant and immaterial; 2d, because the declarations of Bunk Simms, made a month or two before the killing, could not affect the defendant; and 3d, because no conspiracy to murder Bill Simms had been proven and the answer did not prove such a conspiracy. The objection being overruled the witness testified that Avery said to Bunk Simms, "That fellow was at my house last night, and cursed and abused me mightily," and Bunk Simms said, "Who, Bill?" and Avery answered, "Yes."

II. The same witness, Peter Williams, was further asked by the State what was the state of feeling between Avery, Bunk and Bill Simms. This question and the answer thereto were objected to by the defendant, 1st, because immaterial; 2d, because until a conspiracy between the defendant and Bunk Simms to kill and murder Bill Simms had been proven, the state of feeling between Bunk and Bill Simms could not affect the defendant. The objections being overruled, the witness testified that "Bunk Simms did not like his brother Bill; they were at outs;" but he could not say as to Avery.

III. J. T. Plummer having testified that he and defendant and Bunk Simms went to the house of Bill Simms, and that Bunk Simms carried the double-barrel shot-gun which did the killing, counsel for the State asked him the question if Bunk Simms after the killing told him where the gun had been hidden, after the killing, and if so where; to which question and the answer thereto defendant objected, 1st, because it was not shown that Avery was present; 2d, because this was after the killing

and after the purpose of the conspiracy, if any, had been accomplished.

The objections were overruled and the witness testified that "Bunk Simms told me where he had hidden the gun, but Avery was not present, and I went and got the gun and hid it in another place."

IV. James Kimball, a witness for the State, was introduced to prove what Wash Pollock, a State's witness now dead, had sworn to on a former trial, and said that he could repeat the substance of Pollock's testimony, but that he could not say that he could repeat all of his testimony that was drawn out on cross-examination, but could the substance of it. Defendant's counsel objected on the ground that he could not state all that Pollock said on cross-examination, but what he could state would be correct. The objection was overruled, and the witness was permitted to testify as to what the deceased witness had sworn on a former trial.

V. The rule having been enforced as to the witnesses, J. W. Little was offered as a witness in behalf of the State. His testimony was objected to by the defendant, 1st, because the witness was in the court room and heard a part of the testimony of the State's witness Gregory; 2d, because Gregory had conversed with the witness Little, who had informed him of his (Gregory's) recollection as to a matter involved in the examination. The witness Little, being examined as to the objection to his testifying in chief, said: "I have not been under the rule; I have just come from home; I have heard a part of Gregory's testimony, and Gregory told me the point as to which my testimony would be taken, and Gregory informed me what his recollection was upon that point." The objection being overruled, the witness was permitted to testify as set out in the statement of facts. In signing a bill of exceptions as set out above, the judge appends thereto the following explanation as to his rulings: "The

evidence in this case, as in the case of *The State* v. *Simms*, tried a few days ago, leaving out the testimony of the accomplice, is all circumstantial, and in such case I take it that any fact bearing even remotely upon the transaction, and tending to throw light upon it, is admissible in evidence. The evidence here objected to, except the evidence of the witness Little, I take to be of that character. The witness Little had testified a few days before, on the Simms trial, as to the same matter, and, knowing what his evidence then was, I thought it a proper exercise of judicial discretion to allow him to testify in this case. And further, while the fact testified to by the witness was to a great extent immaterial, the necessity or propriety of the introduction of the evidence was induced by an attempt on the part of the defendant to contradict the evidence of the witness Peter Williams."

The charges asked by the defendant's counsel and refused by the court, which form the second assignment of error, are as follows:

"1st. If the jury believe from the evidence that a conspiracy on the part of the accomplice J. T. Plummer and Bunk Simms and the defendant Avery, to murder William Simms, is established only by the testimony of the accomplice, and that Plummer's testimony to that fact has not been corroborated by some other witness, then the conspiracy to murder William Simms has not been proved:

"2d. It is not sufficient that the evidence of the accomplice be corroborated by other testimony as to one of the several parties charged with the murder of William Simms, but the confirmation should be in some fact which goes to fix guilt upon the defendant as charged in the indictment; and if you do not believe the accomplice Plummer has been thus corroborated on some fact which goes to fix guilt on the defendant Avery, you will find him not guilty."

These instructions were refused on the ground, as stated by the judge, that "they are based on an assumed want of proof which I do not think exists. So far as I think the legal proposition embraced in the second instruction asked is applicable to the facts, it is, I think, sufficiently covered by the general charge."

That portion of the general charge which relates to the necessity of corroborating an accomplice is as follows: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense,—that is, if it merely shows that a murder has been committed. The term *accomplice* as here used includes any one connected in a criminal sense with the offense committed, either as a principal or otherwise. To corroborate means to strengthen, to make more certain, to give additional strength to; and the corroboration may be by testimony either direct or circumstantial, and by proof of the same facts testified to by the accomplice, or by the proof of other and different facts, provided, in either case, such facts tend to connect the defendant on trial with the offense committed. If the testimony of the witness Plummer, an accomplice in this case, has been thus corroborated, and the evidence then taken altogether leaves you without reasonable doubt as to the guilt of the defendant, you should return a verdict of guilty; otherwise not guilty."

The foregoing contains a sufficient reference to the record in order to determine understandingly the various errors assigned by the appellant's counsel.

Recurring now to the first assignment of errors, and to defendant's bill of exceptions, as to the first point mentioned in the bill of exceptions which relates to a conversation between Bunk Simms and Avery at a time anterior to the killing, and also as to the testimony embraced in

the second point in the bill, we are still of the same opinion expressed in the case of *Simms*, decided by this court on a former day of the present term.    The testimony was both relevant and material under the peculiar circumstances which attended the investigation.    The principal objection urged against the admission of the testimony seems to be based upon the idea that there had not been, up to that time, any definite proof that a conspiracy had been formed by and between Bunk Simms, Plummer and the defendant on trial, to take the life of William Simms; and that therefore it was not competent to prove a conversation between Bunk Simms and Avery, which did not embrace Plummer also, or to inquire into the state of feeling existing between Bunk Simms and William Simms anterior to the killing.

It is true that, in proving conspiracy, in order to make the acts and declarations of one admissible against another or others, it is usual to commence with proof of the conspiracy to do the thing for the doing of which it is desired to charge the other parties concerned; but this rule is by no means absolute, and for obvious reasons.    The general rule itself seems not to be so broad as is contended for in the present case; it only requires that a foundation be first laid by proof sufficient, in the opinion of the judge, to establish *prima facie* the fact of a conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact.    1 Greenl. Ev. § 111.    So that it is erroneous to suppose that there is any inflexible rule of law which requires in the first instance more than a *prima facie* case of conspiracy in order to let in the evidence.    The rule as thus stated is not without its recognized exceptions.    Says Mr. Wharton in his work on Criminal Evidence, § 698 a, "As it may sometimes interfere with the proper development of the case to require the trial to begin with the proof of the conspiracy, in such a case the prosecution may on the trial prove the decla-

rations and acts made and done in absence of the others, before proving the conspiracy between the defendants, provided, proof of such conspiracy is afterwards made." Mr. Greenleaf (1 Greenl. Ev. § 111) says: "Sometimes, for the sake of convenience, the acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof at a subsequent stage of the cause."

It seems, however, that whether the court shall hear the evidence when offered or first require proof of the conspiracy is a question which addresses itself to the sound discretion of the judge before whom the trial is had; and in such a case we would not feel inclined to interfere further than to ascertain that proper proof of the conspiracy was in fact made at some proper stage of the trial. In fact we are not aware of any rule of law in general, or of practice in any of the courts in Texas, which requires absolutely that either party to any kind of suit whatever shall commence a chain of evidence by which a case is to be proved at any particular point in the chain of evidence. On the contrary, he may commence at either end of the chain, so that he connects with the other, or he may commence in the center or at any other intermediate point, and from there connect with both ends of the chain. *Heard* v. *State*, 9 Texas Ct. App. 1.

It would, however, be more systematic in the conduct of a trial to commence at either one or the other end of the chain of evidence, and connect, link by link, in regular successive order, to the other end; but, whilst this would better accord with correct practice, it would often be found impracticable and inconvenient, and ought not to be enforced with any great degree of severity. In cases like the present, the law is, that, when the connection of the several individuals in the unlawful enterprise is established by competent testimony, every act and declaration of each member of the confederacy in pursuance of the originally

contemplated plan and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each of them. And it makes no difference at what time any one entered into the conspiracy; every one who enters into the common purpose or design is generally deemed in law a party to every act which has been done by others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design. 1 Greenl. Ev. § 111, and authorities cited in note 1; *Davis* v. *State*, 9 Texas Ct. App. 363; *Cox et als.* v. *State*, 8 Texas Ct. App. 254; *Simms* v. *State*, at the present term, *ante*, p. 131.

As to the question to and answer of the witness Plummer concerning the disposition which Bunk Simms had made of the gun after the killing, set out in the third paragraph of the bill of exceptions, we are of opinion that, in the absence of proof that the defendant Avery was present, and because the enterprise in which they had been engaged had been consummated by the death of William Simms, before the statements were made, the statements so made were not strictly admissible against this defendant; but, whilst this is true, we fail to see that it was of any material importance in determining the question of the defendant's guilt. Whether Bunk Simms hid the gun or not, after it had performed its part in the work of depriving William Simms of his life, was to our minds of very little moment, and, whether admitted or excluded from the jury, the verdict would doubtless have been the same. We can conceive of but one object counsel could have had in view in asking the question; that is, that information might thus be obtained which would lead to the discovery and recovery of one of the implements with which the murder was effected, and even for this purpose the question might well have been omitted, for the reason that similar testimony was obtained from

another source, and which was received without objection, as is shown by the testimony of the witness Gregory as set out in the statement of facts. In this connection it should be noted that, whilst in *Simms'* case, decided at the present term, the testimony of Gregory was excepted to at the trial, in the present case it was received without objection.

With reference to the fourth point in the bill of exceptions, we are of opinion the objections to the admissibility of the testimony of the witness Kimball, offered for the purpose of reproducing on the trial facts which had been testified to by a witness on a former trial of the case, who was shown to have died since giving his testimony, were not well taken. The witness Kimball, on his examination, brought himself within the well established rule of law to reproduce the testimony of the deceased witness, by showing an ability to give the substance of the testimony of the deceased witness. *Black* v. *State*, 1 Texas Ct. App. 368; *Simms* v. *State*, decided at the present term, and authorities there cited, *ante*, p. 131.

With reference to the witness Little, as set out in the fifth paragraph of the bill of exceptions, it is sufficient to say that, questions of this character being confided to the discretion of trial judges as to whether a witness who had not been placed under the rule shall be permitted to testify or not, this court will not revise the action unless a clear case of abuse of judicial discretion be made to appear, and that too to the prejudice of the defendant. *Jones* v. *State*, 3 Texas Ct. App. 150; *Ham* v. *State*, 4 Ct. App. 645; *Estep* v. *State*, 9 Texas Ct. App. 366. As to the witness having conversed with another witness, this portion of the objection had reference to his credibility, not to his competency.

With reference to the second assignment of errors, the refusal of the judge to give to the jury certain special instructions asked by the defendant's counsel as herein-

before set out at length, we are of opinion that the court did not err in refusing the charges. With reference to the first charge asked and refused, the true inquiry was whether the defendant on trial was connected with the murder as a principal participant, or not; and not as to whether all the parties charged with the conspiracy had so participated.

As to the second charge asked and refused, we are of opinion it was unnecessary; the general charge as set out herein being deemed sufficient to properly inform the jury as to their duty on this branch of their investigation. The general charge of the court on the subject of the necessity of the corroboration of the testimony of an accomplice in order to warrant a conviction, and as to the certainty to which the corroborating testimony must tend, is deemed to be amply sufficient. There is no exception to the general charge of the court as given to the jury; the special charges seem to have been requested on the idea that the general charge, whilst deemed correct, fell short of giving to the jury all the instructions necessary for their guidance under the facts in evidence. We are of opinion the general charge is not obnoxious to this criticism.

With reference to the third assignment of errors, to the effect that the testimony is not sufficient to support the verdict, we are of opinion this raises but one question, to wit: the sufficiency of the evidence confirmatory of the witness Plummer. This question addressed itself first to the consideration of the judge who presided at the trial, and was raised by the motion for a new trial. He had the witnesses before him, saw their manner of testifying, and how they stood the test of a rigid cross-examination, and refused a new trial. This being the case, this court would not interfere unless indeed the testimony as disclosed by the record before us should appear to be insufficient to warrant the verdict of the jury and the judgment

of the court.   The testimony of the accomplice Plummer established, as conclusively as that character of testimony can, the guilty participation of appellant, as well as of himself and Bunk Simms, in the murder charged in the indictment, and we are of opinion that the testimony of Plummer was sufficiently corroborated by other witnesses to the extent of pertinently identifying the appellant with the crime committed.   We are of opinion the verdict and judgment are not without legal and competent testimony sufficient for their support.   It is within the knowledge of this court that the appellant has heretofore been convicted on testimony quite similar to that adduced on the present trial.   That conviction was set aside, but not on account of a defect in the proof.   On the present trial, so far as we can determine, every legal right of his under the law has been carefully guarded.   The general charge of the court seems to have been entirely fair and impartial, and submitted to the jury in appropriate language every issue arising upon the evidence.

We have given to the case our most serious consideration, without discovering any error committed on the trial below which would warrant this court in interfering with the judgment rendered.   This being the case, however serious the consequences may be to the appellant, it is our duty to affirm the judgment, and it is so ordered.

*Affirmed.*